IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WAYDE L. HESS,** | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:CV-03-2396 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **GALE SMYERS, MARK D.** | : | |
| **FETTERMAN, YORK COUNTY** | : | |
| **ADULT PROBATION DEPARTMENT,** | : | |
| **YORK COUNTY PUBLIC DEFENDER** | : | |
| **OFFICE, YORK COUNTY CLERK OF** | : | |
| **COURT, and YORK COUNTY,** | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Before the Court are two motions for summary judgment filed by the above-captioned Defendants (Doc. Nos. 94, 97), together with Magistrate Judge Smyser's report and recommendation on the motions (Doc. No. 107), Plaintiff's objection thereto (Doc. Nos. 108, 111), and Defendant Fetterman's reply (Doc. Nos. 110, 112).  The motions have been fully briefed and are ripe for disposition.

**I.   BACKGROUND**

   **A.   Factual Background**

On December 8, 1999, Plaintiff pleaded guilty to a charge of driving under the influence (DUI) before the Honorable Judge John H. Chronister, in York County, Pennsylvania.  He was given a sentence of 22 days (7 days of work release followed by 15 days of house arrest) to one-year imprisonment and was paroled on January 9, 2000, with 343 days remaining on his maximum sentence.

On May 4, 2000, Plaintiff was arrested in neighboring Lancaster County for another DUI offense and possession of a small amount of marijuana and drug paraphernalia. Plaintiff was freed on conditions of release from Lancaster County upon these May 4th charges, which were later bound over for trial at a July 3, 2000, preliminary hearing. Plaintiff remained free on these conditions until August 3, 2000, when he was arrested and charged in Lancaster County with new charges of arson, criminal trespass, and criminal conspiracy.

Lancaster County conducted a preliminary hearing regarding these new charges on August 4, 2000, at which time bail was set for Plaintiff. Although Plaintiff posted bail on August 8, 2000, Defendant York County Adult Probation Department placed a 72-hour temporary detainer upon Plaintiff. As a result of this detainer, Plaintiff was not released from the Lancaster County jail. On August 10, 2000, Judge Chronister issued a permanent detainer with respect to Plaintiff for a possible criminal violation committed while Plaintiff was on parole from York County.

On September 18, 2000, Plaintiff pleaded guilty to the Lancaster DUI and drug charges. He was sentenced to serve between 3 and 23 months imprisonment and was granted parole on February 13, 2001. Plaintiff was transferred from the Lancaster County prison to the York County prison on March 13, 2001.

From April through May, 2001, Plaintiff implored his sister to telephone Defendant Smyers, a York County parole officer, requesting relief from being held under the detainer. Defendant Smyers ignored several of Plaintiff's letters but eventually responded on May 12, 2001, with a note reading, "[p]olicy with severe new offenses, we detain." (Doc. No. 1, ¶ 33.)

On June 14, 2001, Plaintiff's attorney filed a habeas corpus petition, which Judge

Chronister denied, refusing to remove the detainer on the grounds that "the Court can not determine whether a violation has occurred, or the appropriate disposition until the new charges are resolved." (Doc. No. 103, Plaintiff's Ex. 5.) Between July 24, 2001 and August 6, 2001, Plaintiff applied for assistance with the Defendant York County Public Defender's Office but received no response. On August 10, 2001, Plaintiff's attorney again contacted Judge Chronister to request that the detainer be lifted, but Judge Chronister denied the request. Judge Chronister agreed that Plaintiff was being held under the York County Detainer beginning on February 13, 2001 – the date upon which he was granted parole from Lancaster County – and that he would not consider releasing Plaintiff until he served the entire one-year sentence for his York County DUI. After Defendant Smyers calculated that date to be January 22, 2002 Judge Chronister entered an order directing that Plaintiff be released on January 22, 2002, and Plaintiff was released from York County Prison on that day.[1] By that point, Plaintiff still had not faced trial on the Lancaster County arson charges.

Plaintiff alleges that he filed a pro se habeas corpus petition with Defendant York County Clerk of Court on December 28, 2001, but no action was ever taken on that petition.[2] Plaintiff

---

[1] Defendant Smyers had previously determined that Plaintiff should have been released on earlier dates. On July 2, 2001, Defendant Smyers requested that Judge Chronister remove the detainer effective July 13, 2001 (apparently counting Plaintiff's 22 days served prior to January 9, 2000, plus the time he served from August 4, 2000 up to July 13 to reach Plaintiff's maximum one-year sentence), and on December 21, 2001, Defendant Smyers sent another memorandum to Judge Chronister indicating that Plaintiff's time had been served (apparently counting Plaintiff's 22 days served prior to January 9, 2000, plus the time served on the York detainer but before being sentenced for the Lancaster DUI, which was between August 8, 2000, and September 18, 2000, and additionally adding in the time from February 13, 2001 to December 2001, when Plaintiff was again being held only on the basis of the York County detainer).

[2] Defendant York County Clerk of Court does not recall receiving such a petition and accordingly denies its existence, but it acknowledges that if such a petition was filed pro se on

filed a second pro se habeas corpus petition on January 18, 2002, docketed on January 23, 2002, but no action was taken on it.  Plaintiff additionally filed a pro se appeal of Judge Chronister's January 2, 2002, decision, but the Pennsylvania Superior Court dismissed it as moot on July 11, 2002.

> B.   **Procedural History**

On December 29, 2003, Plaintiff filed the instant action pro se. (Doc. No. 1.)  The complaint alleges that Defendants collectively and individually violated Plaintiff's rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  The York and Lancaster Defendants moved to dismiss the complaint on April 30, 2004.  (Doc. Nos. 14, 17.)  On January 19, 2005, Plaintiff's claims against Judge Chronister were dismissed on the basis of absolute judicial immunity.  (Doc. No. 32.)  On February 28, 2005, the remaining motions to dismiss were denied.  (Doc. No. 39.)

On December 8, 2005, the parties stipulated that "Lancaster County District Attorney's Office, Lancaster County and Donald R. Totaro, only are dismissed from this case with prejudice." (Doc. No. 93) (emphasis in original).  This stipulation left Defendant Fetterman as the only remaining Lancaster Defendant.

Magistrate Judge Smyser issued his report and recommendation on the Defendants' motions for summary judgment on March 24, 2006, in which he acknowledged that Plaintiff's claim that his federally-protected right to due process was violated "clearly has merit," but

---

behalf of a prisoner who had an attorney of record, as was the case with Plaintiff, the Clerk would not docket that petition but would instead forward the petition to the petitioner's counsel of record, as provided by the then-applicable version of Pennsylvania Rule of Criminal Procedure 576, as discussed further herein.

concluded that all Defendants should be granted summary judgment on the basis of qualified immunity and/or quasi-judicial immunity. (Doc. No. 107, at 15.) Plaintiff objected to Magistrate Judge Smyser's report and recommendation, arguing that the institutional Defendants and the Defendants in their official capacities are not entitled to qualified immunity and that Magistrate Judge Smyser did not dispose of Plaintiff's First Amendment claim that Defendants denied him access to the courts resulting from the failure of the York County Clerk of Court to docket and process one of his habeas petitions. (Doc. Nos. 108, 111.) Defendant Fetterman responded, claiming that he could no longer properly be sued in his official capacity and asserting that the complaint did not contain any claim under the First Amendment. (Doc. No. 110, ¶ 3.)

## II.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the suit under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual disputes are genuine only if there is sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 249. When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).

Once the moving party has shown that there is an absence of evidence to support the

claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in his complaint; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).

When objections to a report and recommendation have been filed, the Court must make a de novo consideration of those portions of the report to which objections relate. Carter v. Apfel, 220 F. Supp. 2d 393, 395 (M.D. Pa. 2000) (citing Samples v. Deicks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)). In so doing, the Court may accept, reject, or modify the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1); Local Rule 72.1. Further, in the exercise of sound judicial discretion, the Court may rely on the Magistrate Judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984) ("the Supreme Court has recognized the discretion afforded federal district courts in their use of magistrate's reports").

### III.    DISCUSSION

The Court has carefully reviewed Magistrate Judge Smyser's report and recommendation, as well as Plaintiff's objections thereto. Upon review, the Court must agree with Judge Smyser that Plaintiff's remaining claims are barred by the doctrines of quasi-judicial and/or qualified immunity, or otherwise on the basis that the Defendants lacked involvement in the alleged civil rights violations, and that the entirety of Plaintiff's claims relate to the decision of Judge Chronister to detain Plaintiff to serve the duration of his one-year sentence for DUI after it was determined, with little or no process, that Plaintiff had violated the terms of his parole. In

reaching this conclusion, Magistrate Judge Smyser noted that "[t]here is merit in the plaintiff's assertion that it was a violation of his right to due process for the state to cause him to be subject to continual confinement without any hearing or process. . . . It appears to be rather clear that rights of the plaintiff under Morrissey v. Brewer [408 U.S. 471 (1971)] were violated." (Doc. No. 107, at 16.)  This Court agrees entirely with Judge Smyser's conclusion – not only that Defendants are entitled to summary judgment, but also that the facts of this case indicate that Plaintiff's right to due process was violated.  Indeed, the Court notes its concern with what appears to be the undisputed fact that Plaintiff remained incarcerated on a detainer for 343 days predicated on a violation of his parole, without ever being afforded adequate notice of the grounds for his detention by York County after he had been released on his Lancaster County charges, or a probable cause hearing to determine whether he violated his parole, or a revocation hearing.[3]  The Supreme Court in Morrissey v. Brewer noted that while criminal defendants charged with violating their parole do not enjoy "the full panoply of rights" that are normally available in a criminal proceeding, 408 U.S. at 480, they are entitled to at least some minimal due process, including being provided written notice of the claimed violations of parole and a revocation hearing within a "reasonable time after the parolee is taken into custody," id. at 488-

---

[3] It may be true, as the York County Defendants assert, that the fact that Plaintiff pleaded guilty to a DUI and minor drug charges in Lancaster County obviated the requirement that he be provided a probable cause or revocation hearing before his parole could be revoked.  However, Morrissey also requires, at a minimum, that a parolee be provided, inter alia, "(a) written notice of the claimed violations of parole . . . (b) disclosure to the parolee of evidence against him . . . and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole."  Id. at 489.  Although not entirely clear from the record, the Court cannot definitively find that Plaintiff received any of the foregoing "minimum requirements of due process."  Id. at 488.

89.[4]

      Nevertheless, the Court agrees with the analysis set forth in Magistrate Judge Smyser's report and recommendation, by which he concludes that the remaining Defendants are entitled to entry of summary judgment in their favor on all claims on grounds of quasi-judicial and/or qualified immunity.  The Court also agrees with Judge Smyser that the central element to Plaintiff's entire cause of action – namely, being held on a detainer without process – was the result of Judge Chronister's order, not the alleged actions of any other named Defendants.  Judge Chronister has been dismissed from this action on the grounds of absolute judicial immunity, and the Court does not find that Plaintiff can maintain his claims against other named Defendants for a decision rendered by Judge Chronister.

      One of Plaintiff's objections requires separate discussion.  Plaintiff contends that Magistrate Judge Smyser failed to address Plaintiff's claim that his rights to petition government under the First Amendment were violated when the York County Clerk of Court failed to docket Plaintiff's December 28, 2001, pro se petition for habeas corpus relief.  Upon consideration of

---

[4] It is true, as Defendant Fetterman notes, that the Supreme Court in Morrissey did not dictate a precise time within which such a hearing must be held in order to comport with due process.  Moreover, at the time Morrissey was issued, the Supreme Court acknowledged that in some jurisdictions, a two-month delay prior to such revocation hearing being held "would not appear to be unreasonable."  Id. at 488.  Whatever delays might be permissible under Morrissey, it is clear from the opinion that "the revocation hearing must be tendered within a reasonable time after the parolee is taken into custody."  Id. (emphasis added).  In this case, Plaintiff never received a hearing, and nothing in the record suggests that such a hearing was ever scheduled or even contemplated.  The Court does not interpret Morrissey to suggest that because the case does not fix a firm deadline for a revocation hearing, that the requirement of a hearing can simply be ignored and a parolee detained for months without process.  Indeed, in Morrissey, the Court contemplated that parolees would be given prompt informal preliminary hearings to establish probable cause to revoke parole, followed by a revocation hearing.  Plaintiff did not receive either hearing in this case.

the limited facts alleged with respect to this claim, it is not at all clear that Plaintiff has adduced sufficient evidence of a constitutional violation in the first place. Furthermore, even if the Court were to find that the York County Clerk of Court's failure to file Plaintiff's habeas petition constituted a violation of Plaintiff's right of access to the courts, the Clerk of Court would be entitled to qualified immunity on this claim.

Qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (internal quotation marks, brackets, and citations omitted). An essential attribute of qualified immunity is the "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service. Id. Government officials performing discretionary functions are thus shielded from liability for damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is the defendant's burden to establish that it is entitled to qualified immunity. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

Turning to the case at bar, the record reflects that on June 13, 2001, Plaintiff, by and through his counsel, filed a petition with Judge Chronister seeking to be released from jail.

Judge Chronister denied this petition in a brief order.  Plaintiff maintains that he submitted a second petition for relief on December 28, 2001, this time filing the petition pro se.  Plaintiff claims his First Amendment rights were violated when the York County Clerk of Court failed to docket the petition.[5]  The York County Clerk of Court maintains that it has no record of Plaintiff having filed a petition at this time and therefore denies the existence of such petition.  Indeed, the record contains no evidence of Plaintiff's December 28, 2001, habeas petition.  For this reason alone, and even taking the facts in the light most favorable to Plaintiff, it appears that Defendant York County Clerk of Court would be entitled to summary judgment on Plaintiff's claim that his right of access to the courts was abridged by the alleged failure to docket Plaintiff's petition.

However, even assuming that Plaintiff had presented sufficient evidence that he did, in fact, file a pro se habeas petition on December 28, 2001, and that the Clerk of Court failed to docket the petition, the Court concludes that the York County Clerk of Court would be entitled to qualified immunity from this claim.  The Clerk of Court attested that if Plaintiff had filed the petition pro se after previously filing a petition through counsel, the clerk's office would have declined to accept the filing and would have instead returned the petition to Gerald Lord, Esq., Plaintiff's last counsel of record, pursuant to the version of Rule 576 of the Pennsylvania Rules of Criminal Procedure that was then in effect, consistent with the office's standard practices.

---

[5] Plaintiff appears to be arguing both that his right of access to the courts and his right to petition for redress of grievances were abridged, in violation of the First Amendment.  In general, the right of access to the courts is construed as a right protected by the Due Process Clause of the Fourteenth Amendment.  However, the constitutional right of access to the courts has been found in a number of constitutional guarantees.  See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) (recognizing a constitutional right to effectively use the courts in Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment guarantees of equal protection and due process).

(Doc. No. 95, Defendants' Ex. 28, ¶¶ 1-2.) That rule, which was subsequently revised in 2004,[6] provided as follows:

> In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall not docket or record it, but shall forward it to the defendant's attorney within 10 days of receipt.

Pa. R. Crim. P. 576(c). Accordingly, to the extent Plaintiff did, in fact, file a petition on December 28, 2001, the only evidence in the record indicates that the Clerk of Court's practice at the time was to follow the applicable rules of criminal procedure governing the treatment of filings by a criminal defendant who is represented by counsel, by declining to docket the submission and instead returning the document to the defendant's counsel of record. In this case, Petitioner had been represented by an attorney who had, approximately 6 months earlier, filed a petition for relief on his behalf. If Plaintiff filed a pro se petition in December 2001, and the Clerk of Court redirected the petition to Plaintiff's last-known counsel of record consistent with Rule 576 of the Pennsylvania Rules of Criminal Procedure then in effect, Plaintiff has not established a violation of his First Amendment right to petition the court for redress of his grievances.

Moreover, even if the Clerk of Court's action of redirecting Plaintiff's alleged habeas

---

[6] On March 3, 2004, this rule was revised and now provides as follows: "In any case in which a defendant is represented by an attorney, if the defendant submits for filing a written motion, notice, or document that has not been signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the document in the criminal case file. A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth within 10 days of receipt." Pa. R. Crim. P. 576(c). Notably, the revision addresses precisely the problem that Plaintiff alleges occurred in this case where the petition he allegedly filed on December 28, 2001, was never docketed.

petition to his last counsel of record in adherence to an applicable rule of criminal procedure could be considered a violation of the First Amendment, the Court can only find that the Clerk of Court would remain entitled to qualified immunity.  This is so because the Court finds that the very existence of an applicable rule of criminal procedure, promulgated by the Pennsylvania Supreme Court, forecloses any claim that the act of adhering to such rule could be perceived as a violation of a clearly established right of which a reasonable person should have known; indeed, the fact that the Clerk of Court would follow an applicable rule of procedure would support precisely the opposite inference.  In sum, even construing the facts in the light most favorable to the Plaintiff and assuming that he did file a petition with the York County Clerk of Court on December 28, 2001, the only evidence of record indicates that the Clerk of Court would have forwarded such petition to Plaintiff's counsel of record and would not have maintained a copy or docketed the petition.  Whatever the wisdom of this practice, such conduct would comport with the version of Rule 576 of the Pennsylvania Rules of Criminal Procedure then in effect, and the Court thus finds that the York Count Clerk of Court is entitled to qualified immunity on Plaintiff's claim regarding right of access to the courts.[7]

Beyond an analysis of qualified immunity, the Court emphasizes that the record makes clear that Plaintiff's detention in the York County jail was the result of Judge Chronister's decision to issue a permanent detainer, and the Court can perceive no involvement of the Clerk of Court or any other municipal or individual Defendant in the decision to hold Plaintiff that

---

[7] Although the Court has found it appropriate to discuss Plaintiff's objection in this regard, the Court emphasizes that Plaintiff's detention in the York County jail was the result of Judge Chronister's decision to issue a permanent detainer, and the Court can perceive no involvement of any other Defendant in the decision to hold Plaintiff.

---

would be required to expose such Defendants to liability for Plaintiff's claims.

## IV. CONCLUSION

For all of the foregoing reasons, the Court will adopt Magistrate Judge Smyser's report and recommendation and overrule Plaintiff's objection thereto. The Clerk of Court shall be instructed to enter judgment in favor of the remaining Defendants and to close the file. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYDE L. HESS,** | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 1:CV-03-2396 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **GALE SMYERS, MARK D. FETTERMAN, YORK COUNTY ADULT PROBATION DEPARTMENT, YORK COUNTY PUBLIC DEFENDER OFFICE, YORK COUNTY CLERK OF COURT, and YORK COUNTY,** | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW**, this 14th day of November 2006, upon consideration of Defendants' motions for summary judgment (Doc. Nos. 94, 97), Magistrate Judge Smyser's report and recommendation that the motion be granted (Doc. No. 107), and upon consideration of Plaintiff's objections to the report and recommendation (Doc. No. 108, 111); and for the reasons set forth in the within memorandum; **IT IS HEREBY ORDERED THAT:**

1. The Court **ADOPTS** Magistrate Judge Smyser's report and recommendation.

2. Plaintiff's objections to the report and recommendation are **OVERRULED**.

3. Defendants' Motions for Summary Judgment (Doc. Nos. 94, 97) are **GRANTED**.

4. The Clerk of Court is directed to enter judgment in favor of Defendants and to close the file.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania